

DA 07-0529

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 255

ALEX ZIER,

        Plaintiff and Appellant,

   v.

TOM HANCOCK, TOM VAN HOOSE, CBOB
FINANCIAL CORPORATION, k/n/a
BEARTOOTH BANK, JOHN DOE BOARD
OF DIRECTORS I-XVIII,

        Defendants and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DV 06-209
                 Honorable Ingrid Gustafson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Torger Oaas, Attorney at Law, Lewistown, Montana

        For Appellee:

                Mark D. Parker, Parker, Heitz & Cosgrove, Billings, Montana

                        Submitted on Briefs:  June 18, 2008

                                  Decided:  July 22, 2008

Filed:

_____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Alex Zier (Zier) appeals from an order of the Thirteenth Judicial District, Yellowstone County, granting summary judgment to Tom Hancock, Tom Van Hoose, and Beartooth Bank (collectively "Beartooth"). We affirm.

¶2    Zier presents the following issue for review:

¶3    Whether the District Court properly determined that the Montana Wrongful Discharge from Employment Act (WDEA) governed Zier's claim.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4    Zier began talking with accountant Pat Davison in 2002 about collaborating to open a new bank in Billings, Montana. Zier and Davison enlisted Beartooth's support in this endeavor. Zier entered into two nearly identical letter agreements with Beartooth. Zier signed the first agreement on March 17, 2003, and signed the second agreement four months later on July 1, 2003. Tom Hancock signed the March agreement on behalf of Beartooth, and Pat Davison signed the July agreement on behalf of Beartooth.

¶5    The agreements provided that Zier would become the president of Beartooth Bank upon the happening of two contingencies: (1) Beartooth obtaining a contingent charter from the Division of Banking; and (2) Beartooth receiving approval from the FDIC. The letter agreements also provided that Zier would receive a salary of $130,000 and benefits. The letter agreements further provided that Zier would receive annual salary increases. The letter agreements did not specify an end date.

¶6    Zier left his position as president of another bank and began working for Beartooth in

2

March 2003 before either of the contingencies had been met. Zier assisted Beartooth in its efforts to obtain the FDIC's approval and the Division of Banking's approval. He also assisted Beartooth in attracting investors. Beartooth paid Zier the salary and benefits provided by the agreements. Beartooth withheld taxes for Zier and Beartooth provided Zier with W-2 tax forms. The Beartooth board of directors terminated Zier on January 17, 2005. The directors also did not offer Zier the position of bank president as contemplated by the letters of agreement. Beartooth had not yet obtained a charter from the Division of Banking and had not yet received FDIC approval by the time of Zier's termination.

¶7 Zier alleged that his termination constituted a material breach of Beartooth's contractual agreement to hire him as bank president as set forth in the letters of agreement. Beartooth moved for summary judgment. Beartooth argued that Zier's contract claim actually represented a claim for wrongful discharge under the WDEA. Beartooth asserted that the WDEA provided Zier's exclusive remedy and prohibited Zier's claim as Zier had exceeded the one-year statute of limitations provided in the WDEA. Zier countered that Beartooth never had hired him as bank president, and, therefore, could not discharge him. Zier argued that the District Court instead should have applied the eight-year statute of limitations for breach of a written agreement.

¶8 Zier had testified in a deposition, however, that he had been Beartooth's employee between March 2003 and January 2005. Zier testified that he had received an annual salary of $130,000 and benefits, provided for under the letters of agreement, until January 2005.

3

Zier testified that Beartooth had withheld taxes and had supplied him with W-2s. Zier also testified that he understood that Beartooth had terminated his employment when Beartooth's directors informed him in January 2005 that they would not offer Zier a new contract. The District Court relied upon this evidence to conclude that Zier had been an employee of Beartooth pursuant to the letter agreements until his discharge.

¶9 The District Court determined that Zier's claim for relief constituted a wrongful discharge claim under the WDEA rather than a separate contract action. The WDEA's one-year statute of limitations required Zier to bring his claim within one year of the date of his termination on January 17, 2005. Zier filed his complaint on February 27, 2006. The District Court concluded that the WDEA's statute of limitations barred his claims. Zier appeals.

**STANDARD OF REVIEW**

¶10 We review de novo a district court's decision to grant summary judgment. *Prosser v. Kennedy Enterprises, Inc.*, 2008 MT 87, ¶ 10, 342 Mont. 209, ¶ 10, 179 P.3d 1178, ¶ 10. We use the same criteria applied by the district court under M. R. Civ. P. 56. *Prosser*, ¶ 10. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable inferences in favor of the party opposing summary judgment. *Prosser*, ¶ 10.

4

**DISCUSSION**

¶11     *Whether the District Court properly determined that the WDEA governed Zier's claim.*

¶12     Zier argues that the District Court improperly applied the WDEA to a claim that he asserts arose only from the letters of agreement.  Zier admits that he had performed services for Beartooth before the letters of agreement were to go into effect.  Zier also admits that he thought he was an "employee" at the time of his termination.  Zier argues nevertheless that the effect of the letters of agreement should govern this issue.  Zier maintains that, according to the terms of the letters of agreement, Beartooth never had hired him as the conditions upon which the letters of agreement were based had not occurred.

¶13     Zier cites *Kneeland v. Luzenac America, Inc.*, 1998 MT 136,  289 Mont. 201, 961 P.2d 725, for support of his contention that the WDEA could not govern his claim because Beartooth could not discharge him without first hiring him as bank president.  *Kneeland* determined that the WDEA applies only where the employee has been discharged.  *See Kneeland*, ¶ 27 (citing *Beasley v. Semitool, Inc.*, 258 Mont. 258, 262, 853 P.2d 84, 86 (1993)).  Zier also argues that his claim arises from a contract for hire similarly not covered by the WDEA according to *Kneeland's* determination that the WDEA does not bar claims arising from contracts for rehire.  *See Kneeland*, ¶¶ 28-30.  Zier finally argues that the letters of agreement constituted a written contract for a specific term.  The WDEA excludes claims arising from written employment contracts for a specific term.  *Basta v. Crago, Inc.*, 280

5

Mont. 408, 412-13, 930 P.2d 78, 81 (1996) (citing § 39-2-912, MCA).

¶14 We decline to address the substance of Zier's contractual claims, however, in light of the fact that Zier misplaces reliance upon the effectiveness of the letters of agreement. This Court long has recognized the rule that a plaintiff must allege and prove that a contingency or condition precedent has been met where the right of recovery depends upon its happening. *Binzel v. Viehmann*, 111 Mont. 6, 11, 106 P.2d 187, 189 (1940); *J.M. Broat Lumber Co. v. Van Houten*, 66 Mont. 478, 480, 213 P. 1116, 1117 (1923). The Court also has determined that "[a] party generally cannot be liable for a present breach for failure to perform under a contract if that party's obligation to perform is contingent on a condition precedent that has yet to occur." *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 36, 306 Mont. 321, ¶ 36, 34 P.3d 87, ¶ 36 (citing *Management, Inc. v. Mastersons, Inc.*, 189 Mont. 435, 440-41, 616 P.2d 356, 360 (1980)).

¶15 The letters of agreement expressly provided that they would not become effective until the occurrence of two events. First, Beartooth had to obtain a contingent charter from the Division of Banking. Second, Beartooth had to receive approval from the FDIC. Zier acknowledges that neither of these conditions had occurred at the time that Zier filed his complaint on February 24, 2006. Zier has not demonstrated why the District Court should have determined that Beartooth faced potential liability for breach of the letters of the agreement for failure to hire him as president when the conditions upon which the letters of agreement were based had not yet occurred. *Eschenbacher*, ¶ 36. The District Court

properly refused to consider Zier's claim under a contract theory.

¶16    The WDEA provides the exclusive remedy for wrongful discharge. Section 39-2-902, MCA. The WDEA also explicitly preempts all common law remedies. It provides that "'no claim for discharge may arise from tort or express or implied contract.'" *Kulm v. Montana State University-Bozeman*, 285 Mont. 328, 331, 948 P.2d 243, 245 (1997) (quoting § 39-2-913, MCA). The WDEA defines discharge as any termination of employment "including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees . . . ." Section 39-2-903(2), MCA. The WDEA defines an employee as "a person who works for another for hire," who is not an independent contractor. Section 39-2-903(3), MCA.

¶17    The District Court determined that Zier qualified as an employee. He worked for Beartooth for hire; he received a salary and benefits; and he received W-2s from Beartooth. Section 39-2-903(3), MCA. Zier's claim for relief arose from termination of his employment with Beartooth. Zier alleged in his complaint that Beartooth wrongfully had refused to hire Zier as bank president when it discharged him from employment on January 17, 2005. Several exceptions to the WDEA exist. These exceptions include claims where the employee has not been discharged, *Kneeland*, ¶ 27 (citing *Beasley*, 258 Mont. at 262, 853 P.2d at 86), and where the claim arises from a written employment contract for a specific term, *Basta*, 280 Mont. at 412-13, 930 P.2d at 81 (citing § 39-2-912, MCA). Zier has failed to demonstrate that either of these exceptions applied to his claim. ¶¶ 14-15.

7

¶18 The WDEA provided the exclusive remedy for Zier's claim. Zier failed to file his complaint within one year of the date of his discharge as required by § 39-2-911(1), MCA. The District Court correctly granted Beartooth's motion for summary judgment.

¶19 We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE